Larry C. SANDERS

v.

The UNITED STATES.

No. 157–74.

United States Court of Claims.

Feb. 21, 1979.

806

John Everhard, Washington, D. C., for plaintiff. Maurice F. Biddle, Washington, D. C., atty. of record. Thomas H. King and Paul A. Kiefer, Washington, D. C., of counsel.

George M. Beasley, III, Washington, D. C., with whom was Asst. Atty. Gen., Barbara Allen Babcock, Washington, D. C., for defendant. R. W. Koskinen, Marc J. Fink, and Peter A. T. Sartin, Washington, D. C., of counsel.

Neil B. Kabatchnick,* Washington, D. C., amicus curiae.

* Representing plaintiffs in related cases. Neil B. Kabatchnick also appeared at oral argument in support of plaintiff's position.

John P. Arness, Washington, D. C., for The Bar Association of the District of Columbia, amicus curiae. John A. Kendrick, Washington, D. C., and Homer A. Walkup, Summersville, of counsel. Richard P. Fox,* Los Angeles, Cal., amicus curiae.

Keith A. Rosenberg,* Washington, D. C., amicus curiae. Jeffrey M. Glosser, Washington, D. C., of counsel.

Robert M. Wright,* Baltimore, Md., amicus curiae. Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, Md., and Keith A. Rosenberg, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, and DAVIS, NICHOLS, KASHIWA, KUNZIG, BENNETT and SMITH, Judges, en banc.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT.

BENNETT, Judge:

The question presented in this case is whether the action of the Air Force Board for Correction of Military Records (hereinafter the Correction Board) denying plaintiff relief was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Plaintiff petitions this court for back pay, the correction of his records, and reinstatement to the rank of captain.[1] We hold that the Correction Board's action cannot be sustained under this standard of review and that plaintiff is entitled to relief.

Plaintiff was formerly a captain on active duty in the Regular United States Air Force until April 30, 1974, when he was involuntarily separated from the service because he had been passed over twice for promotion to the permanent grade of ma-

1. Both in his petition to the Correction Board and in his petition to this court plaintiff also requested promotion to the rank of major. At

jor.[2] Plaintiff's difficulties began 5 years earlier when, on April 21, 1969, he was passed over for promotion to the temporary rank of major by a selection board. On November 17, 1969, plaintiff filed an appli-cation with the Correction Board seeking the removal of four officer effectiveness reports (OERs)[3] from his records.[4] These OERs had been in plaintiff's file since 1965.[5] On December 7, 1970, before the Correction

oral argument, however, plaintiff abandoned this request, and it is not now before the court.

**2.** 10 U.S.C. § 8299(h) provides that an officer, twice passed over for promotion to permanent rank, may not be again considered for promotion under that section. 10 U.S.C. § 8303(d) provides that, after two passovers, an officer will be either retired if appropriate or otherwise separated from the service.

**3.** The military periodically rates individual officers as to their performance and promotion potential. These ratings, which are known as OERs, contain both written comments and numerical evaluations usually made by the rated officer's immediate supervisor.

**4.** The following is a list of the OER ratings received by plaintiff between April 1960 and July 1973:

| Period | Overall Evaluation | Rating |
|---|---|---|
| 19 Jun '59–20 Apr '60 | Training Report | |
| 21 Apr '60–18 Sep '60 | A Very Fine Officer of Great Value to the Service (LB) | (6) |
| 19 Sep '60–18 Mar '61 | A Very Fine Officer of Great Value to the Service (LB) | (6) |
| 19 Mar '61–10 Jul '61 | A Very Fine Officer of Great Value to the Service (MB) | (7) |
| 11 Jul '61–10 Jan '62 | A Very Fine Officer of Great Value to the Service (MB) | (7) |
| 11 Jan '62–12 Jun '62 | A Very Fine Officer of Great Value to the Service (TB) | (8) |
| * 13 Jun '62–12 Dec '62 | Very Fine (LB) | (6–2) |
| * 13 Dec '62– 7 May '63 | Very Fine (LB) | (6–2) |
| 8 May '63– 7 Nov '63 | Effective & Competent (TB) | (5–2) |
| 8 Nov '63–12 Aug '64 | Very Fine (LB) | (6–2) |
| 13 Aug '64– 7 Dec '64 | Very Fine (TB) | (7–3) |
| * 8 Dec '64–27 Jul '65 | Very Fine (LB) | (6–3) |
| 28 Jul '65–18 Jul '66 | Very Fine (TB) | (7–3) |
| 19 Jul '66–20 Apr '67 | Exceptionally Fine | (8–4) |
| 21 Apr '67– 4 Aug '67 | Training Report | |
| 5 Aug '67–14 Mar '68 | Exceptionally Fine | (8–4) |
| 15 Mar '68– 9 Feb '69 | Outstanding | (9–4) |
| 10 Feb '69–15 Jun '69 | Exceptionally Fine | (8–3) |
| 16 Jun '69–27 Apr '70 | Exceptionally Fine | (8–3) |
| 28 Apr '70–27 Apr '71 | Outstanding | (9–4) |
| 28 Apr '71–27 Apr '72 | Outstanding | (9–4) |
| 28 Apr '72–27 Apr '73 | Outstanding | (9–4) |
| 28 Apr '73–31 Jul '73 | Outstanding | (9–4) |

\* These are the OERs voided by the Correction Board.
Note: LB—Low Block; MB—Middle Block; TB—Top Block.

**5.** Defendant's answer raises the affirmative defense of laches, but it is not referred to as such or emphasized in defendant's motion for summary judgment or supplemental briefing. We consider the defense abandoned. The boards that considered plaintiff's applications for correction found them to be timely filed or that the delay in filing was excusable in the interest of justice. It was not until plaintiff was first passed over in 1969 that his OERs became an issue. In any event, defendant has not shown the prejudice required for laches.

Board had acted on his application, plaintiff was passed over a second time for promotion to the temporary rank of major.

On February 26, 1971, the Correction Board denied plaintiff's application, simply stating that plaintiff had not demonstrated the existence of error or injustice in his records.[6] On August 18, 1971, plaintiff sought reconsideration, supplied more documentation and added a request for the voidance of the two passovers for temporary promotion. On November 8, 1971, while the Correction Board was still in the process of evaluating his application, plaintiff was passed over a third time for promotion to the temporary rank of major. After reconsideration of plaintiff's application, the Correction Board recommended to the Secretary the removal of the four OERs from plaintiff's record—some for "error," some for unfairness and injustice [7]—but plaintiff's request for voidance of the passovers for temporary major by selection boards which had considered the four removed OERs was never considered by the board or by the Secretary either through inadvertence or by mistake. The Secretary affirmed the board's recommendation on November 22, 1971. Thereafter, on the basis of a record which did not include the four voided OERs, but without explanation of the absence of OERs covering plaintiff's performance during these periods or of the prior passovers, plaintiff was passed over a first time for promotion to the permanent rank of major, a fourth time for promotion to the temporary rank of major, and a

second time for promotion to the permanent rank of major on August 7, 1972, August 21, 1972, and August 20, 1973, respectively.

On November 21, 1973, plaintiff again applied to the Correction Board, asking further reconsideration of his request to have his first two passovers (for temporary promotion) voided. On December 6, 1973, plaintiff presented a formal application seeking the voidance of all passovers, both temporary and permanent, retention on active duty, and the amendment of his records showing that he had been promoted to major. On March 29, 1974, this application was denied in executive session, without a hearing or explanation, and plaintiff's honorable discharge followed on April 30, 1974. On May 1, 1974, plaintiff brought this suit. On June 19, 1974, plaintiff petitioned the Correction Board to amend his records to show that he was separated from the Air Force under an authority which would permit his enlistment in the Regular Air Force. On August 7, 1974, the Secretary approved the Correction Board's recommendation directing that plaintiff's records be corrected to reflect that he enlisted in the Regular Air Force for a period of 4 years on June 15, 1974, in the grade of sergeant (E-4). Plaintiff now asks this court to hold that the Correction Board on March 29, 1974, acted arbitrarily and capriciously in failing to void the passovers, and to grant him back pay from the time of his discharge (the difference in pay between a captain and sergeant), for an order directing the Secretary to remove all of plaintiff's nonselec-

---

**6.** The standard for reviewing applications for the correction of records of Air Force personnel is found at 32 C.F.R. § 865.7(b) (1972), AFR 31–3 § B(8)(b) (Oct. 21, 1970), which provides: "(b) *Denial of application.* The Board may deny an application if it determines that insufficient relevant evidence has been presented to demonstrate the existence of probable material error or injustice, * * *."

**7.** The record of the proceedings of the AFBCMR, dated Nov. 5, 1971, recommending voidance of the four challenged OERs, found two OERs "erroneous as well as prejudicial" because "vital information relating to applicant's performance of duty was completely overlooked when the reports were prepared." The third was found "unjust and inaccurate,"

because "job accomplishments and/or achievements [were] not reported by the rater * * either through omission and/or inadvertence * * *." The fourth OER was found "unjust and prejudicial" on the grounds that the rater's comments indicated a performance level "definitely above" the numerical rating given.

The conclusion of the report stated that "the Board finds that an injustice has been demonstrated and * * * that the challenged OERs do not represent accurate appraisals of applicant's performance during the periods and are therefore unjust as well as prejudicial to applicant's Air Force career. The Board recommends the challenged reports be voided and removed from applicant's records."

tions for promotion to major, and to restore him to active duty commissioned status as a captain.

On June 13, 1975, the court, troubled by the lack of a rationale for the Air Force's action in voiding the OERs but not the passovers, remanded the case to the Correction Board, instructing it "to make findings of fact showing the basis for its conclusions." *Sanders v. United States,* 207 Ct.Cl. 962 (1975). The Correction Board responded by reviewing the procedural developments, and in an opinion under date of September 2, 1975, refused to void the passovers. The board action was approved by the Secretary on September 15, 1975. The board's position was that the earlier board action in ignoring plaintiff's request to void passovers he felt to have been occasioned by the prejudicial OERs which were voided, was merely "administrative error" or "administrative oversight" that would not have made for a different result had the mistake not been made.

## I

This case was first argued on March 11, 1977. At that time, defendant made a vigorous challenge to our jurisdiction and our role in reviewing the actions of correction and selection boards. Because of the importance of these issues, supplemental briefing by the parties was ordered and five amicus briefs have also been filed.[8]

Since that time, defendant has gone far to clarify its position and narrow the issues. During oral argument, defendant made a general statement to the effect that our jurisdiction over this case was not actually at issue. Defendant also explained that its jurisdictional contentions were in response to what it feels is an attempt by plaintiffs to shift the court's attention to review of the military's corrective process itself rather than military action which is the source of the particular claim for correction and remedial action. Thus, defendant has so completely entangled the concepts of our jurisdiction to review with the scope of our review, which is the primary source of controversy in this case, that such general statements are of little use as concessions, and it is necessary for the court to reach the threshold problem of subject-matter jurisdiction and to discuss points made by the parties relating thereto.

The court has jurisdiction over money claims against the United States "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. As we set forth in *Eastport S. S. Corp. v. United States,* 372 F.2d 1002, 178 Ct.Cl. 599 (1967), the noncontractual[9] claims within our jurisdiction are of two types—those in which a plaintiff has paid money to the Government and seeks its return, and those claims in which money has not been paid, but the plaintiff nonetheless asserts that payment is due. It has been held, in regards to the latter class of case, which we have before us, that "the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." *Eastport S. S. Corp. v. United States, supra,* 372 F.2d at 1007, 178 Ct.Cl. at 605. This category—

\* \* \* includes the varied litigations in which we are urged to hold that some specific provision of law embodies a command to the United States to pay the plaintiff some money, upon proof of conditions which he is said to meet. \* \* \* In this type of case, we have held, "a

---

8. Helpful amicus briefs were received by the court. The rise in the interest in and the number of similar cases challenging release from active duty by reason of nonselections for promotion are direct consequences of the reduction in military manpower requirements and consequent increasingly competitive nature of the officer selection process.

9. It has long been settled that a serviceman's rights are statutory, not contractual. *Bell v. United States,* 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961); *Keef v. United States,* 185 Ct.Cl. 454 (1968).

claimant who says that he is entitled to money from the United States because a statute or a regulation [or the Constitution] grants him that right, in terms or by implication, can properly come to the Court of Claims, at least if his claim is not frivolous, but arguable." *Ralston Steel Corp. v. United States,* 340 F.2d 663, 667, 169 Ct.Cl. 119, 125 (1965), *cert. denied,* 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 [*Eastport S. S. Corp. v. United States, supra,* 372 F.2d at 1008, 178 Ct.Cl. at 606.]

Defendant cites *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), as having some bearing on this case. *Testan* was a suit by Government trial attorneys in the Defense Supply Agency who claimed that their positions were erroneously classified as GS-13, alleging that they were entitled to GS-14 classifications and the pay therefor because their duties and responsibilities met the requirements for the higher grade. The Supreme Court approved the language in *Eastport* and could not find any statute as mandating compensation by the Federal Government for the injury of which plaintiffs had complained. The Court refused to find in the Classification Act, 5 U.S.C. §§ 5101–5115, any authority which changed the settled rule of employee pay claims under subsection (b) of the Back Pay Act, 5 U.S.C. § 5596, that "one is not entitled to the benefit of a position until he has been duly appointed to it." *United States v. Testan, supra,* 424 U.S. at 402, 96 S.Ct. at 955.

 The Back Pay Act does not apply to servicemen. Originally, however, when plaintiff asserted a claim for promotion as well as entitlement to the rank he held

when he was terminated. *Testan's* application to the claim undoubtedly would have had to be considered. The promotion issue is not now properly before the court, having been withdrawn. The remaining issues being what they are, we do not see how the problems posed in *Testan* are at all relevant now. Plaintiff here, however, may derive comfort from the decision of the Supreme Court in *Testan* where it carefully distinguished between the case then before it and those cases concerning wrongful discharge where plaintiff would be claiming money improperly exacted or retained. Plaintiff's situation here is the latter. He alleges that he lost his job because of defendant's mistakes. He asks for relief in the form of money for the salary lost. Plaintiff is not in the situation of a commissioned officer who complains of a passover because improper material in his selection folder was considered by a selection board but he is still serving without loss of his position and pay.[10]

## II

 37 U.S.C. § 204 provides the basic entitlement to pay for commissioned officers in the armed services. The statute confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service. This statute brings the present claim within the bounds outlined in *Eastport* if plaintiff was illegally discharged from commissioned status, as he alleges. Plaintiff has asserted both that he has been improperly terminated by the Air Force and that the Correction Board erred in denying monetary relief for the illegal separation.[11] Plaintiff's claim

10. Where a correction board fails to correct an injustice or a passover is challenged but a back pay claim has not arisen, plaintiff's remedies, if any, would be in the district court by mandamus, 28 U.S.C. § 1361, or declaratory judgment, 28 U.S.C. § 2201.

11. The first public law providing for the correction of military records was section 207 of the Legislative Reorganization Act of 1946. It was amended in 1951 by 65 Stat. 655, now codified as 10 U.S.C. § 1552 which provides:

"(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. * * * Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

* * * * * *

thus falls within our jurisdictional mandate. Parenthetically, the correction board enabling act together with 37 U.S.C. § 204 makes a striking analogy to the Back Pay Act which authorizes retroactive recovery of wages whenever a federal civilian employee has "undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of the pay" to which the employee is otherwise entitled. 5 U.S.C. § 5596(b). This court has jurisdiction over those cases claiming lost pay that not only contest the failure of a military correction board to correct an alleged legal or factual error but also the failure of a correction board to remove a prejudicial injustice, as required under its statutory mandate.

Defendant asserts that our jurisdiction can only be seen in terms of our review of the original military action which gave rise to the claim and not the action of the Correction Board. We do not believe that this can meaningfully be categorized as a question of our jurisdiction to review, but rather as a question of the scope of our review.

Defendant's expressed fear is that the focus of these cases will be the action of the Correction Board itself and the procedures by which its decisions are made. Thus, procedural errors by the Correction Board might rise to the significance of substantive rights and an otherwise unmeritorious claim might prevail. This court has never ascribed to the view that just because the Correction Board makes a simple, harmless procedural error plaintiff is entitled to recover. This point is more fully explored in *Skinner v. United States*, 594 F.2d 824, Ct.Cl. No. 305–75 (Feb. 21, 1979). In any

event, this issue is not pertinent to this case, nor ripe for decision. Further, no serious error, such as violation of a regulation or published mandatory procedure by the Correction Board, has ever been alleged in this case, which is one more in the nature of failure to correct an obvious injustice.

■ We disagree with defendant, however, that our review should not take into consideration the decision of the Correction Board. On the contrary, we are a little surprised at the approach defendant appears to take herein, as we have reviewed these board actions with great frequency since 1951 when the present correction board statute became law, explicitly authorizing the payment of claims consequent upon the correction of military records. 65 Stat. 655 (1951). Congress has acted by providing servicemen with an administrative remedy for their wrongs. Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due. *See, e. g., Skinner v. United States, supra; Boyd v. United States*, 207 Ct.Cl. 1 (1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); *Cooper v. United States*, 203 Ct.Cl. 300, 304 (1973).

■ We agree with defendant that 10 U.S.C. § 1552 confers a certain amount of discretion on the service Secretaries, acting through civilian correction boards. They

"(c) The department concerned may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section the amount is found to be due the claimant on account of his or another's service in the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be. * * * "

The Senate report on the bill, adding the payment provision to 10 U.S.C. § 1552, stated:

"The purpose of the proposed legislation, as amended, is to authorize the Secretaries * * to make certain payments which become due as a result of action taken by the respective Boards for the Correction of Records * * ." [S.Rep.No.923, 82d Cong. 1st Sess., *reprinted in* [1951] 2 U.S.Code Cong. & Admin.Serv. p. 2469.]

Payment of money damages was thus clearly contemplated as stemming from corrections.

are free to prescribe procedures, with the approval of the Secretary of Defense, for the conduct of business by those boards. We have held that the Secretaries are free to place limitations on the range of cases reviewable by the boards, *Biddle v. United States,* 186 Ct.Cl. 87, 94–95 (1968), and to differ with the recommendations of such boards where the evidence is susceptible to varying interpretations, *Boyd v. United States, supra,* 207 Ct.Cl. at 11. But, like the boards, the Secretary must not act in an arbitrary, capricious manner, unsupported by substantial evidence, or in violation of the law. Actions of both are subject to judicial reversal for violation of such standards. This is well settled. *See Hodges v. Callaway,* 499 F.2d 417 (5th Cir. 1974). To say that the statute confers on correction boards or the Secretaries such discretion that we cannot review their action when a case is properly within our jurisdiction, is contrary to the purpose of the statute.

■ Congress conferred broad powers on the Secretaries to remedy errors and injustices. Congress, in so doing, voluntarily and explicitly relinquished its authority in this area and terminated servicemen's access to Congress for correction of military records by way of private bill. 2 U.S.C. § 190g. The conjunction of these statutes implies that the Secretaries have a duty as well as the power to afford servicemen proper relief. Action under 10 U.S.C. § 1552, except when procured by fraud, was made final and conclusive on officers of the United States, but not on the courts of the United States. A specific provision limiting review was stricken in order to permit judicial review "under appropriate circumstances." *Hearings Before a Subcommittee of the House Committee on Armed Services on H.R. 1181,* 82d Cong., 1st Sess. 369, 377, 391–93, 398, 401, 450 (1951); H.R.Rep.No. 449, 82d Cong., 1st Sess. 3 (1951). A claim for back pay within our jurisdiction presents an appropriate occasion for reviewing the actions of correction boards. We believe that the opposite approach of ignoring the decision of the administrative body to which Congress has entrusted the duty to remedy these wrongs would be totally out of line with the traditional role that courts take in these matters. We have said so on prior occasions. In *Friedman v. United States,* 158 F.Supp. 364, 374–77, 141 Ct.Cl. 239, 256–59 (1958), the court supported this position in a careful review of the legislative history of the correction board statute. *Cf. Friedman v. United States,* 310 F.2d 381, 159 Ct.Cl. 1 (1962), *cert. denied sub nom. Lipp v. United States,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). Even if it be argued that the statute and the legislative history are not all that clear and compelling, certainly it is a view reinforced by the Administrative Procedure Act, which embodies the basic presumption of judicial review to one "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," 5 U.S.C. § 702, so long as no statute precludes such relief or the action is not one committed by law to agency discretion, 5 U.S.C. § 701(a), *Hertzog v. United States,* 167 Ct.Cl. 377, 384–85 (1964). The mere failure to provide explicitly by statute for such review is certainly no evidence of intent to withhold it. Such review is withheld only upon a showing of "clear and convincing evidence" of a contrary legislative intent. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681, 685 (1967).

■ The Secretaries, acting through correction boards, have the authority and duty to correct records in order to correct an error or remove an injustice and to pay money found to be due when payment is necessary to correct a particular error or injustice. We have reviewed correction board actions in terms of the liberal mandate of the statute to correct errors and remove injustices, and failure to follow the purpose of the statute has been remedied in this court, a practice sanctioned by our decisions for over two decades, with no complaint from Congress. Indeed, "[t]he fact that this court has the jurisdiction to review actions of military correction boards is not disputable. *Hertzog v. United States,* 167 Ct.Cl. 377, 383–384 (1964), and cases cited therein." *Armstrong v. United States,* 205

Ct.Cl. 754, 761 (1974). This was so even before our authority to correct records was made explicit in 1972 by amendment of 28 U.S.C. § 1491. *See Eicks v. United States,* 172 F.Supp. 445, 145 Ct.Cl. 522 (1959); *Betts v. United States,* 172 F.Supp. 450, 145 Ct.Cl. 530 (1959); *Proper v. United States,* 154 F.Supp. 317, 139 Ct.Cl. 511 (1957).

The broad impact of correction board action was described in *Denton v. United States,* 204 Ct.Cl. 188, 195 (1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1949, 44 L.Ed.2d 449 (1975), where we said:

> * * * In the context of the correction of a military record, this means that once a discretionary decision is made to correct a record, the grant of appropriate money relief is not discretionary but automatic. * * *

Elsewhere we have said that where an applicant has convinced a correction board to correct his record it must not grant him "half-a-loaf" of relief. *DeBow v. United States,* 434 F.2d 1333, 193 Ct.Cl. 499 (1970), *cert. denied,* 404 U.S. 846, 92 S.Ct. 150, 30 L.Ed.2d 84 (1971). He must be made "whole." *Ray v. United States,* 453 F.2d 754, 197 Ct.Cl. 1 (1972). In general, "[m]ilitary correction boards 'have an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief.' *Duhon, supra,* 461 F.2d at 1281, 198 Ct.Cl. at 570 [198 Ct.Cl. 564, 570, 461 F.2d 1278, 1281 (1972)], *quoting Caddington v. United States,* 178 F.Supp. 604, 607, 147 Ct.Cl. 629, 634 (1959)." *Yee v. United States,* 512 F.2d 1383, 1387–88, 206 Ct.Cl. 388, 398 (1975). We will determine, within the bounds of our limited scope of review, whether this duty has been fulfilled.

### III

▮ Whether the claim is based on legal error or material factual error, or injustice amounting to such error, is thus immaterial in regard to our power to review.[12] It may be relevant, however, to the nature of proof necessary for plaintiff to recover. Where an involuntary separation from the military is precipitated by the commission of legal error, the action has been declared void and this court may award back pay to the aggrieved serviceman. *Ricker v. United States,* 396 F.2d 454, 184 Ct.Cl. 402 (1968). Since amendment of 28 U.S.C. § 1491 by Pub.L.No.92–415 in 1972, the relief afforded may also include reinstatement and correction of records. To recover for failure to correct an alleged injustice, such as perhaps based on gross material error of fact or an action contrary to all evidence, it must be proved that such failure was arbitrary and capricious, or in bad faith, or contrary to law, or without rational basis, seriously prejudicial to plaintiff, and with monetary consequences. In such event, the abuse of administrative discretion rises to the level of legal error which merits judicial relief. These are comparatively rare cases. *See, e. g., Doggett v. United States,* 207 Ct.Cl. 478, 483 (1975); *Skaradowski v. United States,* 471 F.2d 627, 200 Ct.Cl. 488 (1973); *Hertzog v. United States, supra; Prince v. United States,* 119 F.Supp. 421, 127 Ct.Cl. 612 (1954). Perhaps they are infrequent because the proof must overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith. *Savio v. United States,* 213 Ct.Cl. 737 (1977); *Boyd v. United States, supra,* 207 Ct.Cl. at 9; *Jordan v. United States,* 205 Ct.Cl. 65 (1974); *Brenner v. United States,* 202 Ct.Cl. 678 (1973), *cert. denied,* 419 U.S. 831, 95 S.Ct. 419, 42 L.Ed.2d 56 (1974); *Biddle v. United States, supra,* 186 Ct.Cl. at 104; *Hankins v. United States,* 183 Ct.Cl. 32 (1968); *Ward v. United States,* 178 Ct.Cl. 210 (1967). Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters. *See Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); *Mindes v. Seaman,* 453 F.2d 197 (5th Cir. 1971). Although correc-

---

12. On the distinction between error and injustice, see *Reale v. United States,* 208 Ct.Cl. 1010, 1011–12, *cert. denied,* 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 129 (1976).

tion board decisions with pay consequences are reviewable here, it cannot be forgotten that Congress entrusted primary responsibility for the record-correction function to the service Secretaries acting through correction boards. Thus, while we may disagree with a correction board about whether or not a specific situation was unjust, we will not substitute our judgment for the board's when reasonable minds could reach differing conclusions. *Snell v. United States,* 168 Ct.Cl. 219, 227 (1964).

The real genesis of plaintiff's claim is the failure of the selection boards to consider him on the basis of a record which portrayed his service career on "a fair and equitable basis" as the statutes require. 10 U.S.C. §§ 3442(c), 8442(c). We hold that a substantially complete and fair record is a necessary requirement of proper consideration by a selection board. As we stated in *Weiss v. United States,* 408 F.2d 416, 419, 187 Ct.Cl. 1, 7 (1969):

> * * * the selection procedure must follow the law. The documents which are sent to a Selection Board for its consideration therefore must be substantially complete, and must fairly portray the officer's record. If a Service Secretary place[s] before the Board an alleged officer's record filled with prejudicial information and omits documents equally pertinent which might have mitigated the adverse impact of the prejudicial information, then the record is not complete, and it is before the Selection Board in a way other than as the statute prescribes. * * *

*See Yee v. United States, supra,* 512 F.2d at 1387, 206 Ct.Cl. at 396–97 (1975) (quoting *Weiss* ). *See also Brooks v. United States,* 213 Ct.Cl. 115 (1977); *Ricker v. United States, supra.* Regulations prescribe that OERs are to be objective and prepared in a certain way. If a particular officer's OER has not been so prepared and that defect could have resulted in his nonselection for promotion followed by discharge, this is legal and factual error and an injustice to the officer as well. If he is not made whole by correction of his record, we can and will

protect the citizen-soldier's legal rights if he is claiming lost pay and reinstatement. "It is established, of course, that federal courts have the power and the duty to inquire whether a military discharge was properly issued under the Constitution, statutes, and regulations." *Matlovich v. Secretary of Air Force,* 47 U.S.L.W. 2361 (D.C.Cir. Dec. 6, 1978).

We do not believe that defendant disagrees with the authority of this general proposition or denies that plaintiff basically fits within the perimeters of this doctrine. Defendant does contend, however, that there is a further consideration which must be dealt with before plaintiff is entitled to relief. In this case defendant asserts that it must be determined whether the error and injustice actually caused plaintiff's nonselections for promotion and his separation from the Air Force. Defendant rightly points out that when the first three temporary selection boards considered plaintiff's selection folder that they were unaware it contained invalid OERs which would later be voided by the Correction Board. When the later temporary and permanent boards considered plaintiff, these OERs had been removed but the file contained no explanation and the earlier passovers were still of record. Defendant reasons from this that the passovers by the selection boards should not be set aside unless plaintiff shows a conclusive causal connection. In other words, it is argued that plaintiff must show that "but for" the error and injustice, unexplained to the selection boards, he "would or probably would have been selected." Stated in reverse, plaintiff must show that the defects in his file alone led to the nonpromotion decisions and to his discharge.

Defendant has cited only one case where an officer has been required to meet anything remotely approaching its "but for" test. *Knehans v. Callaway,* 403 F.Supp. 290 (D.D.C.1975), *aff'd,* 184 U.S.App.D.C. 420, 566 F.2d 312 (1977). We think that the case can easily be distinguished on the facts and that as far as the law is concerned it supports the same result we reach on similar grounds and with the same authorities.

Briefly stated, Knehans was an Army major honorably discharged, having twice been passed over for promotion by selection boards. Before his discharge he alleged that the Secretary violated Army regulations and the statutes by permitting the boards to consider a selection file which did not accurately reflect his record. To the extent relevant to our discussion, there was a negative OER in that file. The Army agreed that the OER had been prepared in violation of certain regulations, voided and removed it, and permitted a standby advisory board to reconsider plaintiff for promotion. He was not promoted, however, and then sought relief from a correction board which also rejected his claim of entitlement to promotion and to remain in the military service.

The district court said, relying on numerous cases including those we rely on, that courts will not hesitate to review the actions of military selection boards which have allegedly engaged in procedural irregularities, although there is a presumption that boards act correctly, on proper records, and in good faith. Major Knehans was said to be a good officer but his other OERs were not of the highest quality and he was not recommended in them for promotion ahead of his peers. We note that the opposite was true of Captain Sanders and that, in fact, as we will later show, he was next in line for promotion. The Correction Board and the court found that Major Knehans' file, although defectively constituted as to the one OER, still "fairly portrayed" his record and that the record did not support his contention that his nonselection was caused by that one OER. Again, the differences from the *Sanders'* facts are evident. The Correction Board in the instant case found that his challenged OERs were erroneous, unjust, and prejudicial to his career and did not fairly portray Captain Sanders' record. We have concluded that there was no other evidence to which his nonpromotion could seemingly be attributed. Their presence in Sanders' file was erroneous and unjust but their removal did not make him whole when the passovers were allowed to stand. Here we have legal error by a selection board which considered an inappropriate file. Also, there was both error and unjustice, arbitrarily and capriciously not corrected by the Air Force Correction Board. In *Knehans,* on the other hand, the courts were unable to conclude that plaintiff's record was so outstanding that the decision by the Correction Board could be termed arbitrary, capricious, or without a rational basis.

The two civilian pay cases cited by defendant to support the application of the "but for" test are ones in which, after presentation of prima facie cases by plaintiffs, the burden was placed on *defendant* to show that but for the conduct complained of, abridgement of first amendment rights in *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and job discrimination in *Day v. Mathews,* 174 U.S.App.D.C. 231, 233, 530 F.2d 1083, 1085 (1976), plaintiff would have been treated in the same way. Failing such proof, plaintiff in *Day* would be promoted by the court and plaintiff in *Mt. Healthy* would be rehired as a school teacher. The reason that this burden is on *defendant* is that "it is only equitable that any [remaining] uncertainty [about why plaintiff has not been promoted] be resolved against the party whose action gave rise to the problem." *Day v. Mathews, supra,* 174 U.S.App. D.C. at 233, 530 F.2d at 1086. Obviously, this reasoning, and the allocation of the burden to the defending party, provide no support that plaintiffs must meet such a standard as "but for" to win reinstatement.

The Correction Board in plaintiff Sanders' case applied the "but for" test to deny him removal of the consequences of OERs it found unjustly prejudiced his military career. Were we to conclude that direct causation was properly required we would be forced to agree with the United States Court of Appeals for the District of Columbia, which held in *Day v. Mathews,* that the ultimate burden falls to defendant. Selection board proceedings are secret and the records of these proceedings are routinely and promptly destroyed soon after the boards have completed their selections. A

further difficulty for plaintiff would be that the but for test requires proof of inherently subjective considerations not really susceptible of proof. It would be all but impossible for a serviceman to prove he would have been promoted but for defendant's error. Thus, the ultimate burden should be on the party whose error and obfuscation of the evidence caused the problem in the first place.

■ We think, however, that the question of shifting burdens is inappropriate in military pay claims for back pay. Such a burden would focus our attention on plaintiff's promotion rather than on the propriety of plaintiff's separation.[13] In *Day,* promotion is granted to rectify past discrimination abuses unless the defending party presents a strong showing that these abuses were without effect. In *Mt. Healthy,* on the other hand, the Court was presented with an employment situation where the decision to rehire was discretionary. The burden (if it can be called that) is there to prevent an employer from being required to rehire a party, a decision normally within his discretion, when there were independent permissible grounds for not so doing. Here, unlike *Day,* there is no question of implied bad faith of the employer; the sole focus is on the injury to this plaintiff. Though similar to *Mt. Healthy,* in that promotion has elements of discretion, military promotion is based on an evaluation of the officer under the whole-man concept. This makes it difficult in most cases to ferret out independent reasons leading to nonselection. Also, unlike *Mt. Healthy,* separation of a serviceman is not normally up to the discretion of the employer, but must be accomplished in accordance with statute and regulation. Some connection between the error or injustice and the separation is expected though we do not perceive it in terms of shifting burdens of proof.

■ Defendant, in challenging our right to review the decisions of correction boards, as contrasted to selection boards, eloquently declares that such review will result in an "intolerable situation in which the claimants are battling the Government on the wrong battlefield, that of the Correction Boards, and firing salvo after salvo of discovery seeking out procedural errors at that level." So far as discovery is concerned, of course, defendant's but for test would cause plaintiffs to seek the widest latitude in trying to find out all about selection board processes and even to seek to query the board members about the subjective considerations that went into their judgments. Discovery is not evil, per se, and defendant is not hesitant to use it when to do so serves its purposes. We think, on balance, that in rejecting defendant's but for test, the burden of discovery on the courts and on the parties will be less and that reasonable use of this process is appropriate to expose mistakes which merit relief as contemplated by the law.

We observe that carried to its logical conclusion, the defendant's but for test would, assuming a plaintiff could produce any viable proof under it at all, place on the court the burden of deciding the issue of promotability. We are not a super selection board. We have repeatedly made it clear that deciding who gets a promotion is not our responsibility, absent proof of a legal right to it which has been violated. *Doggett v. United States, supra,* 207 Ct.Cl. at 482; *Selman v. United States,* 498 F.2d 1354, 204 Ct.Cl. 675 (1974). Simply stated, the effect of adopting and strictly applying the test, as defendant would have us do, would be to slam shut the courthouse door to review of military board actions, no matter how such boards might abuse their discretion and violate their regulations and the statutes. In short, we reaffirm that material factual errors and prejudicial injustices which are not corrected rise to the level of legal error in that the refusal to correct them is in derogation of the mandate of the boards' enabling statutes and, where pay is lost and claimed, 10 U.S.C. § 1552, 37 U.S.C. § 204, and 28 U.S.C. § 1491, enable us to review and right the wrong. This is the

---

13. This discussion in no way bears upon our attitude or the standards by which we would review a claim for promotion which was properly before the court.

rule that comports best with the legislative intent to do justice to those injured by the occasional legal mistakes to be expected in the administration of a vast military personnel system which Congress expects to be brought to account by judicial authority when necessary. We think that the foregoing are among the "appropriate circumstances" which Congress envisaged for judicial review in its committee report on the correction board statute, heretofore cited. *Friedman v. United States, supra,* 310 F.2d at 403–04, 159 Ct.Cl. at 38–39; *Ashe v. McNamara,* 355 F.2d 277, 280–81 (1st Cir. 1965); Jones, *Jurisdiction of the Federal Courts To Review the Character of Military Administrative Discharges,* 57 Colum.L.Rev. 917, 967–70 (1957).

## IV

■ Plaintiff originally sought from the Correction Board the voidance of four OERs and the voidance of the two selection board passovers for the temporary rank of major. Fair consideration of plaintiff for promotion was not had, plaintiff contended, because of the presence of these unfair, prejudicial OERs in his record, as contained in his selection folder. The Correction Board, while it agreed and voided the OERs, failed to consider the passover issue. Later, plaintiff added a claim for voidance of permanent passovers for, though they were made without consideration of the voided OERs, they were affected by the prior passovers by temporary boards, which were part of plaintiff's records.

The Correction Board had found that the presence of these OERs in plaintiff's records was indeed prejudicial to his Air Force career. On remand, however, the Correction Board explained the reason for not granting the further relief of voidance of the passovers:

> * * * Although the Board realizes that the four prejudicial OERs may have been contributory to the applicant's nonselections for promotion to the temporary grade of major in Fiscal Years 1970 through 1972, since his selection folder still contains OERs that are comparable

to the voided reports, it is inconceivable that the prejudicial OERs were the sole and exclusive reasons for his nonselections. * * *

We will not pause to consider the weakness in the board's argument which goes back to OERs earned 8 to 9 years before and which are not in issue. We do emphasize the board's finding that the presence of the OERs it voided "may have been contributory to the applicant's nonselections for promotion to the temporary grade of major in Fiscal Years 1970 through 1972." In the face of this finding, however, it rejected his application to eliminate the passovers on the basis that the OERs could not have been the "sole and exclusive reasons" for his nonselection. Of course, this is sheer speculation. This standard amounts to one of proof "beyond reasonable doubt." It is simply a rewording of the but for standard which we have found is not appropriate to these cases and is not contemplated by the correction of records statute or regulations applicable here. *See* notes 6 and 11, *supra.* We have demonstrated that the regulations require only a showing of "*probable* material error or injustice." [Emphasis added.] *See* note 6, *supra.* Plaintiff here does not have to show the prejudicial OERs were the "sole and exclusive" reason for nonselection to qualify for correction board relief. The board has violated both the spirit and letter of the statute and regulations. In suggesting that plaintiff would not have been promoted even if the defendant had not, by admitted "administrative oversight," committed the admitted errors, the Correction Board is usurping the functions of the selection board, making itself a sort of super selection board, instead of correcting the error and injustice as its charter contemplates and as we think it mandates on this record. Correction boards have a statutory duty to determine whether there has been error or injustice and "to grant thorough and fitting relief." *Yee v. United States, supra.*

Without more, it is established that the OERs had an adverse impact on plaintiff's nonselection to the temporary rank of ma-

jor and that the Correction Board has committed legal error in applying the wrong standard of review and in failing to recognize plaintiff's legal rights were violated when the selection boards considered his record which was substantially incomplete and inaccurate, by the Correction Board's own determination.

There is, however, an attempt by the Correction Board, which we do sympathize with, to formulate a standard for harmless error to avoid windfall recoveries. The Correction Board's attitude was expressed as follows:

> * * * Consequently, in the absence of a showing that the record placed before a selection board was substantially incomplete or inaccurate, the selection board is in the best position to evaluate the promotion potential of those eligible for promotion and its prerogative to render this vital determination should only be usurped under extraordinary circumstances. * * *

It is obvious that the Correction Board did not apply the above-quoted policy in deciding plaintiff's case. It spoke there as if it would grant relief if the record placed before a selection board "was substantially incomplete or inaccurate." It is remarkable, therefore, that it did not void the passovers, as requested, for it found that the record of plaintiff's OERs must be, and it was, voided because "erroneous," "unjust," "inaccurate," and "prejudicial to applicant's Air Force career." *See* note 7, *supra*. It was this defective record that three temporary selection boards considered. We think that the policy quoted above is reasonable, but we also think that the "extraordinary circumstances" mentioned there exist in this case in a dramatic way and that the Correction Board has failed to apply its announced test, opting instead for a harsher one, the "sole and exclusive" test which we have found legally impermissible as contrary to statute and regulation. By denying the excision of passovers which were based on inaccurate records, the Correction Board has prevented the selection board system from considering an officer's true

potential and actual benefit to the armed services in a promoted capacity. This, we conclude, cannot be countenanced except "under extraordinary circumstances." Such circumstances are when the error or injustice was truly harmless, that is, when substantial evidence shows that it was unlikely that the officer would have been promoted in any event. That evidence is missing here. We have not therefore ruled that in every case the simultaneous voidance of an OER and affirmance of a passover will always constitute an abuse of discretion. Earlier in this opinion we have said that it takes more than harmless error or simple injustice to win judicial relief. But, the errors in this case as put before us are not innocuous.

It is admitted by the parties that OERs are the single most important documents in an officer's records. The court said so in *Brooks v. United States, supra*, 213 Ct.Cl. at 120, 126. When plaintiff was first considered by a selection board for temporary promotion to major, four OERs in his record were defective for inaccuracy. One was the lowest rating he had ever received, and all four were well below his average. The only conclusion that can be reached with the information before us is that these four OERs, which did "not represent accurate appraisals" of plaintiff's record and were, again to quote the Correction Board, "unjust as well as prejudicial to applicant's [plaintiff's] Air Force career," necessarily had a substantial impact on the selection board's decision. Although plaintiff's record steadily improved with the accumulation of good OERs, he was passed over again for temporary promotion to major by a selection board which considered the detrimental OERs before they were removed from his file. His troubles were also impacted by the previous passover(s) for promotion. When the Correction Board removed the prejudicial OERs because it said that they were erroneous, unjust, inaccurate, and prejudicial to plaintiff's career, it was ruling in effect that he had not been considered for promotion on the "fair and equitable" basis mandated by the statutes applicable to Army and Air Force officer

promotions. 10 U.S.C. §§ 3442(c), 8442(c). Since he was not so considered, his passovers should have been removed too, so that he could have had a clean slate for selection board consideration on a "fair and equitable" basis. Not to do this was both legal error and an injustice to plaintiff because it was an arbitrary, capricious decision, and an abuse of discretion which aborted the selection process and led to a violation of the statute.

The predicate for recovery herein, however, is the invalidity of plaintiff's termination. Only if the authority to terminate plaintiff was improperly exercised can he recover. Plaintiff's termination was accomplished under the authority of 10 U.S.C. § 8303(d) which required such upon two failures for permanent promotion. In plaintiff's case, he was twice passed over for permanent promotion to the rank of major, as well as a fourth passover for the temporary rank of major,[14] on the basis of a record which did not contain the four defective OERs. The question of whether the original error or injustice impacted the non-selections for permanent rank remains.

Although plaintiff was considered for promotion to permanent rank without the four defective OERs, the Air Force did not require at that time that any explanation, concerning the gap in a serviceman's record caused by the removal of the OERs, be placed in his record.[15] Unexplained gaps in an officer's record prejudice that officer's chances for promotion. *See Yee v. United States, supra.*

█ Also, the selection boards for permanent major considered plaintiff on the basis of a record which contained the fact that he had been previously passed over for promotion (*i. e.*, by boards that had considered the defective OERs). The parties and even the Correction Board acknowledge

that previous passovers may detrimentally affect promotion opportunities. Defendant's own statement emphatically demonstrates the effect of these passovers on the later consideration of plaintiff, "[b]ut that improvement [the improvement in plaintiff's record before later selection boards due to his receipt of several "outstanding" OER ratings] would be counterbalanced by his first two passovers so that one cannot say that plaintiff's net position was greatly improved in his later selection board appearances." Of course, we have concluded that these earlier "counterbalancing" passovers were improperly in plaintiff's record. Thus, the only possible conclusion is that the original error or injustice was compounded rather than remedied by voidance of the OERs without the voidance of the passovers and the placement in plaintiff's record by an adequate explanation of the gaps created thereby.

Plaintiff, in addition, has presented convincing evidence of the detrimental effect the lack of excision and explanation had on his later opportunities for permanent promotion. This evidence, which has not been contested, shows plaintiff's relative position before the two permanent selection boards.

Regular Major Boards

| | CY '72 7 Aug. '72 | CY '73 20 Aug. '73 |
|---|---|---|
| Points below cutoff | .5 | .5 |
| Number with same score as applicant | 35 | 42 |
| Number between applicant and cutoff | 0 | 0 |

We are advised that plaintiff's ranking herein is based on the whole-man concept which takes into consideration many factors indicating plaintiff's job performance and potential for promotion in comparison with other applicants. These factors include OER ratings, education, breadth of experi-

14. Though we will not discuss this fourth temporary passover, the same considerations apply equally.

15. Such a requirement first appeared in AFM 36–10, effective Apr. 30, 1974. The language, which now appears in AFR 36–10, ¶ 3–7(c) (Sept. 15, 1975) provides for one of the follow-

ing statements to appear in the serviceman's record as appropriate: " 'Not rated for the period (date) through (date). Report for this period not available for administrative reasons,' or 'Not rated for the period (date) through (date). Report for this period was removed through appeals board action.' "

ence, overseas tours, level/degree of responsibility, professional competence, combat achievements, awards, and leadership. In addition, plaintiff's comparative position takes into account other factors, such as statutory requirements, budgetary limitations and manpower requirements, which dictate the number of officers who may be selected by any particular selection board. It is clear that the Correction Board made no effort to determine whether any of these factors were considered by the selection board or in weighing whether plaintiff had suffered an error or injustice in the selection process. Plaintiff holds a bachelor's degree, is a graduate of several Air Force schools, flew 127 combat missions in Southeast Asia, received the Air Medal with seven oak-leaf clusters and the Distinguished Flying Cross with two oak-leaf clusters. Also, we have discussed his active duty assignments at increasingly higher levels of responsibility.

Because of the discretionary and subjective nature of the promotion process, it may not be sufficient or even necessary to prove with absolute certainty that an officer would definitely have been promoted simply by showing, as was done here, that an officer was next on the list to be promoted and a change in his records before the selection boards would have resulted in a more favorable presentation of the officer's potential. *Boyd v. United States, supra.* As we have heretofore noted, defendant has required that plaintiff show that "but for" the error the officer "would *or probably would* have been selected." [Emphasis added.] We do not accept this test, as we have indicated, but even so we believe that plaintiff has met it. This evidence, in the case of Captain Sanders, is persuasive in showing that the selection boards were chargeable with prejudicial legal error in their consideration of plaintiff for permanent promotion. The error was that the selection boards did not consider a record which reflected plaintiff's service on "a fair and equitable basis" as the statutes require. 10 U.S.C. §§ 3442(c), 8442(c). The selection boards were led into this error by the failure of the Correction Board in 1971 to void passovers for temporary promotion which grew from the defective OERs. The fact that the selection boards were unaware of this prejudicial legal error does not correct or excuse it. The Correction Board's final decision, that refused to correct this error, lacked a rational basis.

Neither the Correction Board nor defendant has cited any evidence detracting from this conclusion. There is absolutely no basis for concluding that the error and injustice were harmless. Thus, we repeat, the Correction Board's decision denying plaintiff complete relief was arbitrary, capricious, without rational basis, unsupported by substantial evidence, and contrary to law. The Air Force's authority to terminate plaintiff was improperly exercised, and plaintiff is entitled to back pay calculated in accordance with law, and we order his reinstatement to the rank of captain from the date of discharge on April 30, 1974. We further order the Secretary to remove from plaintiff's records all passovers for promotion to major, including the four passovers for temporary promotion and the two for permanent promotion. We also order that an appropriate nonprejudicial explanation be put in plaintiff's records dealing with the gaps therein due to removed OERs and nonselections, if it is not already accomplished. Such an explanation should cover the period of plaintiff's reconstructed service from the time of his discharge up to his reinstatement. It is ordered that upon his corrected record plaintiff be given, if he wishes, restoration to active duty commissioned status and an opportunity for selection in due course by a duly constituted statutory selection board.

Plaintiff's motion for summary judgment is granted in conformity with this opinion. Defendant's cross-motion is denied. Judgment is entered for plaintiff with the amount thereof to be determined pursuant to Rule 131(c). Under Rules 149 and 150 the case is remanded to the Secretary of the Air Force with orders to implement, within a period of not to exceed 6 months, the other relief made a part of this judgment.

FRIEDMAN, Chief Judge, concurring.

I join in Parts I, II and III of the court's opinion. 'I join in Part IV on my understanding that the court is holding only that on the particular facts of this case, the Correction Board committed legal error by not removing plaintiff's three passovers for promotion to temporary major from his file. The significant facts in this case for me are that the two permanent major selection boards that passed over petitioner rated him at the very cutoff point for selection, that the invalidated OERs constituted a significant number of the total OERs the Correction Boards had before them (four out of 21, or almost 20 percent), and that when the three subsequent selection boards considered but rejected plaintiff for promotion there was no explanation in his file of the absence of the eliminated OERs. As I understand its opinion, the court is not deciding that in other circumstances the refusal or the failure of a Correction Board to void passovers where the officer's file contains one or more invalidated OERs would constitute legal error that the court should correct.

NICHOLS, Judge, concurring in which EDWARD S. SMITH, Judge, joins:

I concur in the result, but I am unable to join in the court's opinion as I disagree with some of the statements it contains.

This case was argued March 11, 1977, before a panel consisting of Judges Kunzig, Bennett, and myself. We deemed that any decision was likely to have a precedential impact in view of the large number of cases pending involving situations that were similar at least in broad outline: that is, Armed Services officers were plaintiffs, whose careers were prematurely cut off by nonselection for promotion during the highly competitive post-Vietnam liquidation period, and who alleged themselves victims of unfair OERs. We did not believe we possessed the enlightenment we needed to render an informed and reasoned decision. We therefore directed further supplemental briefing, stating eight questions the briefers should answer. Order of March 15,

1977. (213 Ct.Cl. 724.) The court subsequently decided to rehear the case en banc, and further delay was due to our desire to have our full complement of seven active judges on board for the rehearing.

Question 5 in the above order reflected the panel's uneasiness whether in reviewing Correction Board decisions refusing to correct matters of "injustice" rather than legal error, we might be in danger of overstepping the limits of the congressional consent for the government to be sued in this court. In course of rebriefing and reargument, however, I became convinced that this was not a real issue in Captain Sanders' case, and, therefore, any discussion of it would be dictum. I am surprised and far from gratified to note the role that judicial correction of injustice seems to play in the court's opinion.

My analysis of the case commences with the fact that the Correction Board, or, technically, the Assistant Secretary on the Board's advice, "voided" four OERs in Captain Sanders' file. Whether they did this to correct error or injustice in my view does not matter. Apparently it was the latter as to at least two. They had authority to do it either way. *Reale v. United States*, 208 Ct.Cl. 1010, *cert. denied*, 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 129 (1976). The result of the voiding was that the OERs were legally never in his file. This kind of record correction is effective *ab initio* unless otherwise stated. *Ray v. United States*, 453 F.2d 754, 197 Ct.Cl. 1 (1972). But they were physically present in the file, and part of the basis of three temporary major selection board decisions that passed Captain Sanders over. In the conditions of the times, unhappy as they were for career officers, selection board proceedings were necessarily much like lotteries, but Captain Sanders was entitled by law to a fair lottery, not one weighted in favor of the house. He could not get one with void OERs in his file. In this regard, it seems to me that it flagrantly curtails his legal rights, to say he must show that, but for the void OERs, he would have been selected, I fully agree with the court as to that. There might be some

cases of obvious harmless error, if the officer's record was hopeless, apart from the void OERs, and there might be cases where a subsequent lottery sufficiently showed the error was harmless, but it seems to me legal error for the Board, and a matter of legal wrong to the officer, to allow these passovers to contribute to shorten the officer's active duty career, in any other case.

Thereafter, plaintiff was passed over by one temporary and two permanent major Selection Boards, that did not have the void OERs before them but did have, without explanation or extenuation, the previous illegal passovers. All counsel agree that an officer with unexplained passovers in his record has scant chance of selection. Since these previous ones were highly prejudicial, by a parity of reasoning the later Selection Board decisions were illegal too.

Thus it follows that Captain Sanders has never been legally passed over and is entitled to back pay and to serve on active duty as a captain until two boards have passed him over that have the facts as to prior passovers presented in such a way that they will not be prejudicial.

If my view were adopted by the court, obviously it would follow that under ordinary circumstances no Correction Board would void an OER unless it was prepared to void also any passover that occurred while the voided OER was still in the officer's file. This appears to me to be as it should be. I do not think the voiding of OERs should occur for purely vanity reasons, yet the Air Force Correction Board appears to have seen its function in that light to have done what it did. Under the statutory scheme, 10 U.S.C. § 1552, military records are not corrected to assuage someone's *amour-propre*, but for substantial reasons related to the effect the record, uncorrected, has had and will have on the career and pecuniary welfare of the petitioner. *Caddington v. United States*, 178 F.Supp. 604, 147 Ct.Cl. 629 (1959). Whether the Correction Board voided the OERs on Captain Sanders for insufficient reasons is not before us, but its subsequent actions suggest to me that it thinks so. At any rate,

there is an irreconcilable inconsistency between its voiding the OERs, and not voiding all the passovers, in the circumstances of Captain Sanders' case. Speaking for myself, I am not one who would void an OER lightly, and I would not do it for such stock reasons as that the rating officer wants to repudiate his rating when he learns what effect it has had on the career of the one rated. But this is dictum, as the rightness of the voiding of Captain Sanders' OERs has to be taken as given in the circumstances of the present case. The removal of the OERs, even if for cosmetic motives, creates a legal right to the further actions that the removal necessarily implies.

Thus the question of our power to review a Correction Board refusal to correct a record on the ground the record works an injustice, not amounting to a legal error, is a question not before us in the circumstances of this case. It is, however, forcibly presented by the reasoning and analysis of the court, and, therefore, I deem myself obliged to state my views, further dictum though they may be.

The court cites with approval the distinction, in this context, between "error" and "injustice," as defined in *Reale v. United States, supra* at 1011, 97 S.Ct. 148, "Error," it is there said, is "legal or factual error." " 'Injustice,' when not also 'error,' is treatment by the military authorities, that shocks the sense of justice, but is not technically illegal." We go on to say (p. 1012) that in correcting "injustice" Boards "exercise high discretionary functions in the management of the military establishment." We say that intervention in these matters will often run into jurisdictional obstacles. Reale's application to the Board for a retroactive promotion to active duty as a major we saw as an application for correction of injustice, not error, and we called it discretionary, saying we could see no abuse of discretion in refusing it. It seems clear to me now that even if we had seen abuse of discretion we could not have given the then Captain Reale retroactive active duty as a major. The reference to abuse of discretion was, therefore, no more

than restriction of the holding to the case before us.

It now appears to me that a demand on a Correction Board to rectify "injustice" is really a moral claim, if no legal or factual error can be cited to support the claim. Judicial reluctance if not refusal to adjudicate or even advise Congress on merely moral claims is old in our jurisprudence. *United States v. Choctaw Nation and Chickasaw Nation*, 179 U.S. 494, 532, 21 S.Ct. 149, 45 L.Ed. 291 (1900); *United States v. Realty Company*, 163 U.S. 427, 444, 16 S.Ct. 1120, 41 L.Ed. 215 (1896); *Montgomery v. United States*, 49 Ct.Cl. 574 (1914). We now pass judgment on the morality of our ancestors' doings respecting Indians, as *e. g.* in *United States v. Oneida Nation*, 576 F.2d 870, 217 Ct.Cl. —— (1978), but this is because the Indian Claims Commission Act, 25 U.S.C. § 70a, directs us to do so. Our predecessors very likely would have refused the assignment as contrary to the constitutional separation of powers, but ideas change. The original Tucker Act authorized suits in equity as well as law, as explained in *Pauley Petroleum, Inc. v. United States*, 591 F.2d 1308 (Ct.Cl.1979), and *Mitchell v. United States*, 591 F.2d 1300 (Ct.Cl.1979), so long as they demanded money only, but "equity" in those days referred to a system of equity jurisprudence, not to moral claims, which were considered outside of "equity" as well as "law." Yet the Tucker Act, 28 U.S.C. § 1491, as now codified, and a money claim thereunder, are the source of our jurisdiction to review decisions of Boards for Correction of Military Records. The doctrine of strict construction of the consent to be sued comes into play. *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). It seems clear to me that this doctrine excludes from our jurisdiction merely moral demands on Correction Boards, and their refusals to grant relief, no matter how arbitrary or capricious, in merely moral cases.

In *Flute v. United States*, 535 F.2d 624, 210 Ct.Cl. 34 (1976) we had a Tucker Act money claimant who had been convicted by a court-martial and reduced in rank. He had asked the Correction Board to review his conviction and it had refused to do so under procedures he said denied him due process. We gave all that had happened along the line the extended review both parties seemed to expect, finding no error. But we pointed out *sua sponte* legislative history evidence that Congress had not meant Correction Boards to constitute another level in the otherwise sufficiently intricate system of appellate review of court-martial sentences. Rather, their function was meant to be of a clemency character. Our conclusion was that complaints about lack of due process in the Board procedures were misdirected in such cases. Clearly the conclusion would have been the same if Flute had relied on an arbitrary and capricious refusal to act in his case. Flute had to show us a constitutional violation in his court-martial, the same whether he came to us directly or via the Board. What the Board did or did not do added nothing to his standing here.

I have no doubt that clemency is a word that might be usefully and informatively applied to much of the business of Correction Boards, and their jurisdiction of moral claims may include much of the same or may be different. Whatever claims for clemency or on moral grounds may include, they and Tucker Act claims are mutually exclusive.

I had supposed that the word "injustice" in 10 U.S.C. § 1552 referred to claims that were moral or founded on clemency grounds, having a strong appeal to the conscience of the court, but lacking a foundation in legal rights. Our feeling about "him who has borne the battle" may lead us to push hard against our jurisdictional constraints, perhaps at times to breach them, as allegedly, but not really in my view we are doing in *Cherry v. United States*, 594 F.2d 795, Ct.Cl. No. 73–77, decided this day. Disputes about individual cases aside, the fact remains that the doctrine of strict construction of the consent to be sued is very much alive and our highest Court is, by its track record, almost always zealous to en-

force it. Deciding cases on "injustice" grounds appears to me to invite reversal, and, therefore, caution in stating such grounds is, as doctors would say, indicated.

I am not sure that the majority opinion uses the word "injustice" in the sense above suggested, though it refers to the *Reale* definition with approval. I rather think it does not. It appears to me to track the opinion in *Yee v. United States*, 206 Ct.Cl. 388, 512 F.2d 1383 (1975), a pre-*Testan* decision which repeatedly calls "injustice" what I would call "error." The Board had restored plaintiff to active duty and corrected what it called an "injustice," rightly so far as I know, in his previous separation. But, though often requested, it failed to put anything in Yee's file that would explain the gap in service, with the result, deemed by the court inevitable, that he was passed over again and again. If the court was correct in *Weiss v. United States*, 408 F.2d 416, 419, 187 Ct.Cl. 1, 7 (1976) in saying that the record before the Selection Board must "fairly portray the officer's record," then clearly the officer has a legal right to have his record a fair one, and the failure was "error," not just "injustice." The idea seemed to be in *Yee*, semantically, that the characterization of Yee's original separation as an "injustice" extended to and covered any other wrong that happened later on. It seems to me we had better face up to calling it "error" if a file before a Selection Board is misleading or incomplete, or else we must expect "strict construction of the consent to be sued" reversals. As I have said, I would respect the ability of a Selection Board to evaluate conflicts of opinion in OERs and would not lightly hold a file illegally composed just because it revealed such a conflict, but if it is illegally composed in truth and fact, then "error," not merely "injustice" is involved.

In *Skaradowski v. United States*, 471 F.2d 627, 200 Ct.Cl. 488 (1973), the trial judge's opinion and findings, which we confirmed, showed a "factual error" in failure of official records to show an order, which plaintiff received orally, and obeyed, to serve a period of active duty. We somewhat gratuitiously, in our per curiam affirmance, said that the Board was arbitrary and capricious in not removing what we called an injustice. We were not yet instructed, by *Testan, supra*, that any Board might be arbitrary and capricious in our eyes and still we might not have a case under the Tucker Act enabling us to take corrective action. In *Duhon v. United States*, 461 F.2d 1278, 198 Ct.Cl. 564 (1972) what we called an injustice was really a factual error that effected an injustice. Earlier cases then cited answer to the same analysis and bear no resemblance to the case at bar. Both by its text, and by my recollection of our deliberations, *Skaradowski* was the first case in which we noted that there must be a difference between "error" and "injustice" and considered what the difference might be and how it might affect our jurisdiction. If this court has ever reversed a Board for an arbitrary and capricious decision denying a moral or clemency claim, not invoking any legal right, we have done so inadvertently and lacking the light we now have from *Testan*. Now that we have it, we should not track old decisions in using the word "injustice" needlessly and in a manner to invite *Testan* -type reversals. If a claimant has only moral or clemency grounds, lacking any invocation of a legal right, we must turn him down, and it makes no difference whether he has run his case through a Board or not.