**James L. MURPHY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 128–80C.

United States Claims Court.

Nov. 30, 1990.

Guy J. Ferrante, Falls Church, Va., for plaintiff.

John S. Groat, Washington, D.C., with whom were Asst. Atty. Gen. Stuart M. Gerson and Director David M. Cohen, for defendant.

## OPINION

ROBINSON, Judge:

This matter is before the court upon the parties' briefs and oral argument with respect to the amount of constructive service to which plaintiff is entitled under applicable statutes and Air Force regulations as a result of this court's prior Opinion issued March 2, 1989. In that prior Opinion, this court held that plaintiff had been illegally separated from active duty as a Reserve officer and that he was entitled to reinstatement in the rank of major to active duty as of June 26, 1975.[1] For the reasons which follow, the court finds that plaintiff under such statutes and regulations is entitled to sufficient constructive credit to allow plaintiff a total of 28 years and 30 days of active duty service. The amount of back pay due plaintiff, correction of his records, and a remand of the case to the Secretary of the Air Force for action consistent with this court's prior Opinion and this Opinion will be the subject of further proceedings and a subsequent order of this court.

### Background

This case involves a suit by a retired Air Force Reserve officer pursuant to 28 U.S.C. § 1491, *et seq.*, as amended, seeking reinstatement, back pay, correction of military records, a remand of the case to the Secretary of the Air Force, and other relief.[2] The matter was submitted to the court upon cross-motions for summary judgment. The court denied in part, and granted in part, the parties' motions. Thus, the court concluded that the Air Force Board for Correction of Military Records (AFBCMR) had erred under appli-

---

1. *Murphy v. United States,* 16 Cl.Ct. 385, 406 (1989).

2. The facts relating to plaintiff's ordered reinstatement are set forth in full in the March 2, 1989 Opinion and need not be restated in full for purposes of this Opinion.

cable standards of review and that plaintiff was entitled to some of the relief sought. The Opinion stated that plaintiff's record considered by two Reserve Officer Screening Boards (ROSB), which resulted in termination of his active duty status, contained such significantly harmful factual and legal errors that plaintiff could not have received fair consideration of the merits of his retention. However, although the court determined that plaintiff's record must be expunged of these two non-selections, it found that based upon binding legal precedent it had no power to order plaintiff's promotion to the rank of lieutenant colonel.[3]

Since issuance of the Opinion of March 2, 1989, the parties have engaged in intensive, but unsuccessful efforts to resolve issues relating to the amount of constructive active duty service time plaintiff is entitled to have credited to him, assuming that plaintiff is reinstated as of June 26, 1975. Therefore, the court is required to resolve these issues so that a final judgment may be entered disposing of the matter.

### The Parties' Contentions

Plaintiff contends that regardless of the authority accorded to the Secretary under 10 U.S.C. § 681 to terminate plaintiff's service, he should be reinstated at least through the date of this court's judgment and perhaps later. To support this contention, plaintiff first relies upon 37 U.S.C. § 204 which "confers upon an officer the right to the pay of the rank he was appointed to up until he is properly separated from

the service." *Sanders v. United States,* 219 Ct.Cl. 285, 296–97, 594 F.2d 804, 810 (1979) (*en banc*). Thus, plaintiff contends that if he is reinstated to active duty, only after proper separation procedures have been taken may he be terminated from that duty. Plaintiff maintains, further, that as a holder of Indefinite Reserve (career) Status (IRS), as that category is defined in AFR 36–14 ¶ 2.b.,[4][5] he had only two possible automatic limits on the amount of time he could legally spend on active duty. The first arises under 10 U.S.C. § 8843, which requires separation of all IRS officers, below the Reserve grade of major general, at 60 years of age. Plaintiff argues that that statute is inapplicable since he is presently under that age. The second arises under 10 U.S.C. § 8848, which limits IRS Reserve officers in active status to a total of 28 years and 30 days of service. Plaintiff has adopted defendant's initial position that because this statute refers to officers on "active status" as opposed to "active duty" it has no relevance to this case.[6] *Jamerson v. United States,* 185 Ct.Cl. 471, 401 F.2d 808 (1968). Thus, plaintiff contends that there is no applicable regulation which would compel his separation down to the date of this court's final judgment and thereafter, until he is properly discharged under an applicable regulation. Alternatively, he argues that if 10 U.S.C. § 8848 is applicable, his minimum accumulated service cannot be less than 28 years and 30 days.

Plaintiff strongly contests defendant's contention that AFR 36–14 ¶ 3 is applicable

---

**3.** *Riley,* 204 Ct.Cl. 865, 529 F.2d 531 (1974); *Brenner v. United States,* 202 Ct.Cl. 678 (1973), *cert. denied* 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974); *Clinton v. United States,* 191 Ct.Cl. 604, 606, 423 F.2d 1367, 1368 (1970).

**4.** AFR stands for Air Force Regulation.

**5.** AFR 36–14 ¶ 2.b. provides as follows:
   2. Terms Explained.
      \*   \*   \*   \*   \*   \*
   b. Indefinite Reserve Status (IRS). The status of an officer of the Reserve Component who agrees to remain on AD [active duty] for an indefinite period. IRS is attained when the approving or procurement authority accepts any properly executed statement or agreement to

"enter and remain on AD for an unlimited or indefinite period." NOTE: Indefinite Reserve Status was formerly called Career Reserve Status.

**6.** This court's earlier Opinion held that plaintiff was entitled to constructive *active duty* service. That Opinion did not identify plaintiff's status (i.e., active, inactive, retired) while on constructive active duty.

   Defendant had at first also contended that 10 U.S.C. § 8848 "has no relevance" in this case (D's response, p. 2). It subsequently changed its position as expressed during a February 22, 1990 status conference. Thus, defendant maintains that 10 U.S.C. § 8848 does limit a Reserve officer's service to 28 years and 30 days.

as a binding "policy" which necessarily would have required his separation after 20 years or upon eligibility for retirement which ever came later. Plaintiff contends that defendant has mischaracterized and misinterpreted AFR 36–14 ¶ 3, and that notwithstanding the various declarations defendant has submitted in support of its argument, AFR 36–14 ¶ 3 is not a statement of "policy" at all, but if it is, defendant's evidence does not show that it is a *binding* "policy" due to the numerous unwritten exceptions that have been made to it, which preclude giving that "policy" any binding legal effect. Plaintiff also urges the court to consider the holding in *Riley v. United States*, 221 Ct.Cl. 308, 608 F.2d 441 (1979), which in substance ignored the "policy" in ordering that Capt. Riley "be given, if he wishes, restoration to active duty commissioned status." [7]

Further, plaintiff argues that AFR 36–14 ¶ 3 is not an "operative regulation" because it has no essential implementing provisions such as those regulations which cover the separation of Reserve officers for stated grounds. Plaintiff asserts that defendant's interpretation of AFR 36–14 ¶ 3, is entitled to no deference because it is neither reasonable nor rational in light of the regulations' internal lack of substance and inconsistency in its interpretation by the Air Force's Military Personnel Center.

Thus, plaintiff maintains he must be ordered restored to active duty until formal action is taken under applicable regulations terminating his service, and that this court should remand the matter to the Secretary of the Air Force so that plaintiff may be considered in due course for promotion to the Reserve grade of lieutenant colonel based upon his corrected record.

Defendant contends that because of the broad discretionary authority given the Secretary under 10 U.S.C. § 681, plaintiff would have been terminated at the point he reached retirement eligibility which was on April 30, 1980. Further, defendant contends that although there may be no applicable statute or definitive regulation which supports its position, AFR 36–14 ¶ 3 reflects a binding Air Force "policy" regarding separation which has the force and effect of a regulation and compels limiting the period of plaintiff's accumulated active duty service to 20 years or until he was eligible to retire as an officer, whichever was later. Defendant asserts that since April 30, 1980 was the date on which plaintiff was eligible to retire as an officer, that is the termination date which must be used for determination of plaintiff's constructive service. Defendant further contends the Air Force's interpretation of AFR 36–14 ¶ 3, as iterated in the declarations of Assistant Secretary of the Air Force, Karen R. Keesling, Capt. Jackie D. Farmer, and Maj. Larry W. Neptune, are entitled to great deference under the holdings in *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945), and other cited cases.[8]

---

**7.** It is not contested that the "policy" statement in AFR 36–14 ¶ 3, has existed since the July 24, 1973 edition of AFR 36–14. Therefore, it was undoubtedly in effect at the time that *Riley* was decided. It should also be noted that plaintiff no longer relies upon *Yee v. United States*, 206 Ct.Cl. 388, 512 F.2d 1383 (1975), since that case did not concern a Reserve officer.

**8.** Ms. Keesling has overall responsibility, under the Secretary of the Air Force, for policy affecting military personnel of the Air Force. She alleges in her declaration that Air Force policy concerning IRS officers is contained in AFR 36–14 ¶ 3 which limits IRS officers' active duty career to 20 years, or until eligible to retire as an officer, whichever is later.

Capt. Farmer is the Chief, Officer Appointments/Selective Continuation, Section in the Directorate of Personnel Program Management, at the Air Force Military Personnel Center. She also alleges that AFR 36–14 ¶ 3 limits an IRS officer to 20 years on active duty or until eligible to retire as an officer. In a second declaration Capt. Farmer acknowledged that AFR 36–21 (discussed later in this Opinion) permitted the Air Force to continue on active duty selected officers, from a wide variety of specialties, possessing needed critical skills. Capt. Farmer included a list of reserve officers who have been allowed, under AFR 36–21, to continue beyond 20 years of active duty service. Although the declaration did not so specify, defendant interpreted this second declaration to mean that these individuals would necessarily have been discharged under AFR 36–14 ¶ 3.

Maj. Neptune is the Chief, Appeals and Analysis Branch, in the Promotion Division at the Air Force Military Personnel Center. His declaration concerned Maj. Murphy's entitlement for

Therefore, defendant urges that this court find that plaintiff's period of constructive service cannot extend beyond April 30, 1980.

## DISCUSSION

The first question presented is whether 10 U.S.C. § 681 would necessarily have resulted in plaintiff's separation at any particular time, for example, upon the date of his eligibility for retirement, due to the Secretary's exercise of his discretionary authority.

A careful analysis of this argument, shows that it is completely without merit. First, defendant offers no factual proof in support of this assertion. No instances are cited by defendant in which the Secretary uniformly took such discretionary action under this provision in circumstances similar to those here involved. Second, in plaintiff's case, given his exemplary record and the Air Force's expressed need for officers in plaintiff's category of expertise, it is doubtful that the Secretary would have taken such action, particularly if plaintiff at the same time may have qualified for another discretionary exemption. Third, assuming that the Secretary could have exercised authority under 10 U.S.C. § 681 to separate plaintiff at the point he would have been eligible for retirement, it is the purest speculation that he necessarily would have done so. *Roberts v. Vance,* 343 F.2d 236 (D.C.Cir.1964). This court simply cannot assume that the Secretary would have taken discretionary action adverse to plaintiff's interests. More than likely, any such action would have been *favorable* to his interests particularly under the circumstances shown by the plaintiff to have existed during the relevant period including manpower shortages of experienced officers in plaintiff's service category. Defendant has the burden of

showing that plaintiff necessarily would have been separated upon the date of plaintiff's eligibility for retirement pursuant to 10 U.S.C. § 681. It has failed to meet that burden.[9]

The second question presented is whether AFR 36–14 ¶ 3, as defendant contends, is a binding requirement applicable to the separation of IRS officers and, therefore, would necessarily have forced plaintiff's separation on April 30, 1980. Our analysis of this question begins with AFR 36–14 ¶ 3. That regulation provides as follows:

3. HQ USAF *Objective.* The *objective* of the IRS program is to complement the Air Force with highly qualified volunteer officers required to achieve a total force *comprised of a planned mix of Regular and Reserve officers.* IRS status is offered to eligible officers who desire and are qualified to remain on AD [Active Duty] beyond their initial DOS [Date of Separation]. *Currently the AD career of such officers is limited to 20 years of active military service or until eligible to retire as an officer, whichever is later.* Legislation (Defense Officer Personnel Management Act (DOPMA)) supported by Department of Defense (DOD) and Air Force has been proposed, however, which envisions that only Regular officers will be retained beyond 11 years' active commissioned service. Reserve officers who are not augmented by the end of their 11th year of active commissioned service will be separated or retired. *If this legislative proposal is enacted,* the Services will be authorized a 2–year transition period to align the officer force with the provisions of the DOPMA. IRS officers who will be primarily affected during the transition period will be Reserves with at least 11 but less than 16 years' active commissioned ser-

consideration for promotion to lieutenant colonel. In addition, he alleged that a Reserve military member in the grade of major, who is not a pilot or navigator, can only serve twenty years of active duty service.

**9.** *Sanders v. United States* 219 Ct.Cl. 285, 306, 594 F.2d 804, 816 (1979) ("burden should be on the party whose error and obfuscation of the

evidence caused the problem in the first place"); *see also Engels v. United States,* 230 Ct.Cl. 465, 468–69, 678 F.2d 173, 175 (1982) ("the defendant, with its far greater knowledge of the facts, statistics, and operations ..., is in much better position to produce evidence and materials"); *Cornetta v. United States,* 851 F.2d 1372 (Fed. Cir.1988) (*en banc*).

vice. *If these officers are not augmented during the transition period they normally will be separated or retired.* Air Force *intends* to augment as many as possible consistent with long term management goals. Reserve officers with at least 9 but less than 11 years' active commissioned service during the transition period *normally* will be augmented if selected for major. *If the DOPMA passes,* Reserve officers with at least 16 years' total active service will retire as soon as eligible (20 years' active service including 10 years' active commissioned service).

    a. Approval and selection for IRS is based on the officer's potential for a career in the Air Force, the number of officers needed to sustain the career force as called for in the USAF Personnel Plan, and the needs of the Air Force for the applicant's skills and qualifications.

    b. During their tours of AD, IRS officers remain eligible for separation in advance of their established DOS according to AFM 33–4 and AFR 36–12, as appropriate. To be eligible for voluntary separation, they must complete their active duty service commitments (ADSC) incurred under AFR 36–51, unless appropriate waivers are granted. Acceptance of IRS does not prevent earlier separation when required by law or policy.

(Emphasis added.)

It is plaintiff's contention that defendant cannot prevail because it cannot prove conclusively that plaintiff *would* have been, as opposed to *could* have been, discharged pursuant to this regulation. The key provision in the regulation, which is the primary authority cited by defendant in support of its contention, is the second sentence which states: *"Currently* the AD career of such officers is limited to 20 years of active military service or until eligible to retire as an officer, whichever is later." (Emphasis added.) However, as Capt. Jackie D. Farmer's first declaration, which purports to substantiate the defendant's position, admits, "This regulation was not founded on a statute, but reflected Air Force policy."

AFR 36–14 ¶ 3, is not an independent "policy" statement but is a part of Section A—General Information, within AFR 36–14, "telling how a Reserve of the Air Force (Res AF) officer may attain Indefinite Reserve Status." In short, the clear purpose of AFR 36–14 is to provide *general* information regarding how an applying officer may achieve IRS status and, to set forth *general objectives* regarding the planned mix of Regular and Reserve officers as well as the *current* objective of limiting the AD career of IRS officers to 20 years or until eligible to retire as an officer, whichever is later. The regulation's use of the word "current" implies the possibility of change. In fact, the regulation discusses the *possibility* of legislation, specifically the DOPMA, being enacted which would effect the length of service of Reserve officers in IRS, along with the "intent" of the Air Force regarding the augmentation of officers who might otherwise be separated "consistent with long term management goals."

Clearly, this regulation does not purport to bind the Air Force to any long term fixed requirement of separating IRS Reserve officers after 20 years or until eligible for retirement, but to the contrary, it purports to allow the Air Force the wide discretion and latitude it needs to adjust its components of Regular and Reserve officers "consistent with long term management goals" and as unforeseen circumstances may dictate. The term, "indefinite reserve status," as defined in AFR 36–14 ¶ 2.b., also supports the adjustable nature of IRS Reserve officers' periods of service by also stating that it is "unlimited." Obviously, such a flexible and variable approach to its manpower needs is both practical and wise. The Air Force logically cannot have it both ways—on the one hand an inflexible "policy" for purposes of judging plaintiff's constructive length of service and on the other a non-binding guide or statement of objective which the Air Force may disregard at will, within the Secretary's discretion, in consonance with its varying manpower needs.

The court agrees with plaintiff that one would expect that a binding statement of Air Force policy applicable to IRS Reserve officers' separations would be contained in a carefully written and published regulation having unequivocal terms and, thus, allowing very little room for dispute as to its meaning. AFR 36–14 ¶ 3, is not such a regulation. It is in the nature of a general proclamation, precatory in terms, goal oriented, and indicates change is likely. Therefore the court concludes that AFR 36–14 ¶ 3 is not a binding policy and would not necessarily have limited plaintiff's Active Duty service to 20 years.

Adding support to the court's conclusion is the fact that defendant has not provided the court with any evidence, statistical or otherwise, that as a matter of practice all IRS officers are routinely discharged or retired in accordance with AFR 36–14 ¶ 3. The only supporting evidence proffered by defendant is the inconsistent and conflict-

ing declarations of Ms. Keesling, Capt. Farmer and Maj. Neptune. For the most part, this evidence merely addresses the issue of whether or not AFR 36–14 ¶ 3 is binding Air Force policy. In fact, if the court adopts defendant's interpretation of Capt. Farmer's second declaration, that exceptions were made to AFR 36–14 ¶ 3 pursuant to AFR 36–21 (see footnote 8), then defendant's evidence demonstrates that AFR 36–14 ¶ 3 has been ignored in practice by the Air Force, presumably to meet changing requirements for Reserve officers.[10] Clearly, what defendant's evidence does show is that under AFR 36–21 the Air Force has on numerous occasions, without even a reference to AFR 36–14 ¶ 3, offered to continue IRS Reserve officers for varying periods and in a wide variety of service specialties.[11] Some of these are contained in the following listing compiled from Capt. Farmer's second declaration:

---

**10.** The court at its request was furnished with a copy of AFR 36–21 (Selective Continuation Program) dated 1 August 1987, by plaintiff's counsel. This regulation makes no reference to AFR 36–14 ¶ 3. It is abundantly clear from a careful reading of AFR 36–21 that this regulation's purpose is to selectively continue those individuals who have twice been passed over for promotion. The court concludes that if IRS officers in the rank of major who have been twice passed over for promotion can be offered continuance under AFR 36–21, notwithstanding AFR 36–14 ¶ 3, then it would make no sense whatever to insist for "policy" reasons upon the discharge of IRS officers, such as plaintiff, who have otherwise exemplary records and have never suffered the first promotion passover.

**11.** One can conclude from the second declaration of Capt. Farmer, whose office is primarily responsible for administration of AFR 36–14 and AFR 36–21 (Selective Continuation Program), that plaintiff's rank as an IRS major (had he been passed over twice for promotion to lieutenant colonel) would likely have entitled him to consideration for continuation under

AFR 36–21, in view of applicable Air Force personnel requirements. However, since Capt. Farmer has no statistics available for any period earlier than November 1983, it cannot be determined from her declaration that IRS officers in plaintiff's area of specialty during such earlier period would or would not have been retained under AFR 36–21 or otherwise within the discretion of the Secretary.

Plaintiff suggested that the defendant should furnish a list from the Air Force's Finance Center of all Reserve officers who are currently receiving retirement at a rate commensurate with more than 20 years of active service. Such a list, if it revealed a significant number of IRS Reserve officers, would obviously have been of value to the court in determining the issue under consideration. Unfortunately, defendant has not furnished such a list or chosen to explain why it has not done so. The inference from defendant's failure to do so or to offer an explanation as to its reasons for that failure, is certainly a negative one.

| Date | Duty Air Force Spec. Code | Number Selected |
|---|---|---|
| 11/28/83 | Air Weapons Directors | Total 5 |
| 11/26/84 | Air Operations Officers (pilots) | |
| | Historical officer | |
| | Nav–Bombardier | |
| | Air Weapons Directors | |
| | Communications | |
| | Supply Management | |
| | Acquisition/Contracting/Manufacturing | |
| | Financial | |
| | Intelligence | Total 13 |
| 10/28/85 | Disaster Preparedness | |
| | Air Op. Officers | |
| | Air Weapons Directors | |
| | Space Operations | |
| | Communications | |
| | Cartographic Geodetic | |
| | Supply Management | |
| | Intelligence | Total 34 |
| 3/7/88 | Air Operations Officers (pilots) | Total 7 |
| | GRAND TOTAL | 59 |

Respecting Capt. Farmer's second declaration, plaintiff contends that it is inconsistent with the declarations of Maj. Neptune and Ms. Keesling; that it is inaccurate and unreliable; that it supports rather than rebuts plaintiff's contention that the "policy" is flexible, permissive, and non-binding; that it is not the best evidence available; that it is unresponsive; and that it is based upon flawed facts regarding plaintiff's record. Therefore, plaintiff argues that Capt. Farmer's declaration be given no weight in support of defendant's case.

The court agrees. Clearly, Capt Farmer's second declaration is flawed. First, it is inconsistent: (1) with Maj. Larry Neptune's declaration that only pilots and navigators were eligible for extension beyond 20 years and with Ms. Keesling's declaration which does not identify any exceptions to 36–14 ¶ 3; (2) with AFR 35–7, which states that only Regular officers, not IRS officers, are subject to mandatory retirement, an inconsistency totally unexplained by defendant; and (3) with *Riley v. United States*, 221 Ct.Cl. 308, 608 F.2d 441 (1979), which resulted in active duty service for a Reserve officer exceeding 25 years.

Second, the declaration purports to address Reserve officers considered for exception from AFR 36–14 ¶ 3 under AFR 36–21. As plaintiff correctly states, however, the declaration does not aver, but merely assumes, that the 59 officers offered continuation under AFR 36–21 were IRS officers necessarily subject to separation from active duty under AFR 36–14 ¶ 3. Some or all of these 59 officers may have been subject to separation soley because they were twice non-selected for promotion. To the extent that this is true, Capt. Farmer's declaration is inaccurate and unreliable.

Third, if the court assumes that Capt. Farmer's second declaration is intended to set forth exemptions from the application of AFR 36–14 ¶ 3, then since November 1983, a total of 59 exceptions have been made to the "policy" explicated in AFR 36–14 ¶ 3, for at least 14 different specialties. Such numerous unwritten exceptions, which do not include those which may have been made during the years 1980, 1981, and 1982, contravene defendant's contention respecting the "binding" nature of the "policy" statement.

Plaintiff also contends Capt. Farmer's second declaration is entitled to no weight because it erroneously assumes that plain-

tiff needed to be selectively continued in the first place. Plaintiff's argument has merit. Defendant has made a totally inadequate showing that the Air Force regularly discharges or retires IRS officers in accordance with AFR 36–14 ¶ 3. As noted previously, the *starting* point for consideration under AFR 36–21 in plaintiff's rank of major is a double failure for promotion to lieutenant colonel.

In view of the above, the court will consider Capt. Farmer's second declaration solely for the purpose of demonstrating that if AFR 36–14 ¶ 3 is Air Force "policy" then that policy, is a flexible and non-binding policy which would not have required plaintiff's separation upon 20 years of active duty service. Additionally, the proffered declarations of Ms. Keesling and Maj. Neptune are also otherwise unsupported and totally unconvincing. Therefore, the court will give them little or no weight.

█ It is unquestioned that Congress has granted the Secretary great discretion regarding release of Reserve officers from active duty. 10 U.S.C. § 681(a). Also, it is not contested that the Secretary's interpretation of the relevant Air Force regulations is entitled to significant deference. *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). However, to be given that deference, the Secretary's interpretation must have a logical basis either in its past applications or the unequivocal language used in the regulation itself. As pertinent here, in this court's view, the Secretary's present interpretation fails both of these tests. It cannot logically be premised solely upon one sentence taken out of context in a general statement of objectives, in

disregard of the purpose of the language of the entire regulation and the Air Force's own long term interpretation of that statement—that at anytime the Secretary chooses to do so, for whatever reason, he may ignore the limiting statement completely and offer to retain any category of officer needed to meet manpower requirements. Again, assuming that AFR 36–21 is applicable, such an *ad hoc* practice of making numerous exceptions over a long period of time shows that plaintiff would not necessarily have been separated in strict conformity with AFR 36–14 ¶ 3, whether or not it is regarded as a "policy." *See also Vietnam Veterans of America v. Secretary of Navy,* 843 F.2d 528, 537 (D.C.Cir. 1988) ("A binding policy statement is an oxymoron.") The Secretary's presently stated interpretation of AFR 36–14 ¶ 3 is not deserving of this court's deference because that interpretation is neither reasonable nor rational in light of the regulation's internal lack of substance [12] and the obvious inconsistency between the Secretary's present interpretation and the regulation's past application by Air Force officials.

In any event, that plaintiff could have continued beyond 20 years, irrespective of AFR 36–21, is supported by the holding in *Riley v. United States,* 221 Ct.Cl. 308, 608 F.2d 441 (1979). In that case the plaintiff, Capt. Riley, was separated from active duty on April 30, 1973, immediately re-enlisted, and formally retired in November 1977. In 1979, the court concluded his separation had been illegal and, two years after his actual retirement from active duty, ordered that he "be given, if he wishes, restoration to active duty commissioned status." [13] *Riley v. United States,* 221 Ct.Cl. 308, 315, 608 F.2d 441, 445

**12.** Based upon the detailed nature and clarity of other regulations covering separation of officers, the court is persuaded that if there were a legitimate and binding "policy" which would have required plaintiff's discharge, it would have included such essential terms as implementing procedures, instructing personnel officials how to accomplish separation, and guidelines respecting its scope so that officers could have a clear understanding of their rights and service commitments. AFR 36–14 ¶ 3 falls far short of establishing such a binding "policy" framework.

**13.** Although defendant initially argued that plaintiff's reliance upon *Riley* was misplaced because Capt. Riley at the time of his reinstatement would have served only 12 years on active duty, on oral argument, defendant's counsel admitted that, upon investigation, *Riley* does represent an instance in which a Reserve officer was ordered reinstated after 22 years of service and well beyond the limit set forth in AFR 36–14 ¶ 3.

(1979). Thereafter Capt. Riley served on active duty for an additional period of years. The Air Force completely disregarded AFR 36-21 in the resolution of *Riley*. *Riley* certainly is apposite and lends persuasive support to plaintiff's contention that AFR 36-14 ¶ 3, is no more than what it facially purports to be—a non-binding statement of a *general objective* which the Air Force hopes to achieve.[14]

Plaintiff argues that he has not been properly separated from the service and, therefore, is entitled to the pay of his appointed rank up until the time he is properly separated. *Sanders v. United States*, 219 Ct.Cl. 285, 296–97, 594 F.2d 804, 810 (1979) (*en banc*). The question is, however, whether pursuant to 10 U.S.C. § 8848, plaintiff necessarily would have been separated from the service prior to the present time. That provision states:

§ 8848. Twenty-eight years: reserve first lieutenants, captains, majors, and lieutenant colonels.

> After June 30, 1960, each officer in an *active status* in the reserve grade of first lieutenant, captain, or major, and each officer in an active status in the reserve grade of lieutenant colonel who is not on a recommended list for promotion to the reserve grade of colonel, shall, 30 days after he completed 28 years of service computed under section 8853 of this title—
> (1) be transferred to the Retired Reserve, if he is qualified and applies therefor; or
> (2) if he is not qualified or does not apply therefor, be discharged from his reserve appointment. Added Pub.L. 85–861, § 1 (192), Sep. 2, 1958, 72 Stat. 1536.

(Emphasis added.)

Unfortunately this provision is far from clear at least in its application to the facts of this case. This is true, in part, because of the many instances in which the terms "active status" and "active duty" have been used interchangeably. However, the parties do not dispute the fact that a Reserve officer can be in an "active status" without being on "active duty." Also, apparently a Reserve officer may be on "inactive status" (because not eligible for promotion) yet be on active duty. Therefore, these two terms are *not* synonymous. "Active status" merely describes a category of Reserve officers who are eligible for promotion. 10 U.S.C. § 8360. In *Jamerson v. United States*, 185 Ct.Cl. 471, 477, 401 F.2d 808, 811 (1968), the court stated that "One need not be on active duty to receive a Reserve promotion under Title 10, chapter 837, but must be in an active status." Plaintiff's contention is that he was and would have continued to be eligible for promotion to lieutenant colonel. If eligible for that promotion, plaintiff's constructive active duty service under *Jamerson* necessarily would place him in an "active status." Consequently, from the standpoint of his eligibility for promotion, 10 U.S.C. § 8848 is relevant and leads inescapably to the conclusion that for purposes of computing plaintiff's constructive service, the court should consider plaintiff to be both in an "active status" as well as on "active duty." *See* 10 U.S.C. § 267.

■ In short, 10 U.S.C. § 8848 would have required plaintiff's separation from "active status" and "active duty," either because of his transfer to the Retired Reserves or his discharge at the end of 28 years and 30 days of service. Therefore, the court finds that plaintiff is not entitled to retroactive reinstatement to the date of this court's final order or judgment or prospectively until formal action is taken to properly terminate that service, but only until that point at which he would have served for a total of 28 years and 30 days.[15] This sets the limit of constructive active duty service time to be accorded plaintiff. Thus, 10 U.S.C. § 8843, which requires sep-

---

**14.** Capt. Riley actually retired after more than 25 years of AD service to his credit. At no time prior to his retirement did the Air Force attempt to invoke the provisions of AFR 36-14 ¶ 3, in order to bring about his separation.

**15.** According to plaintiff's calculation, his reinstatement should extend, constructively, until at least July 1987.

aration of non-deferred officers at age 60, has no application.

## CONCLUSION

For the above reasons, after giving due deference to the Secretary's interpretation of all applicable Air Force statutes and regulations, the court finds that defendant has not shown by a preponderance of the evidence that under a rational and reasonable interpretation of the AFR 36–14 ¶ 3, a binding "policy" existed which would have compelled plaintiff's separation from IRS as an active duty Reserve officer at the end of 20 years, or upon his eligibility for retirement, whichever occurred later. The court further finds that under a rational and reasonable interpretation of 10 U.S.C. § 8848, that that statute would have compelled plaintiff's separation at the end of 28 years and 30 days. Thus, plaintiff's constructive service time on active duty must be computed in accordance with this finding.

A status conference will be scheduled by a subsequent order to discuss the specific terms of a final order to be entered by this court to effect plaintiff's entitlements under the court's Opinion of March 2, 1989 and this Opinion.

IT IS SO ORDERED.